UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Monty Jones, | Civ. No. 19-33 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Rust Consulting, and Debra Thames, | |
| Defendants. | |

Monty Jones, 1401 Portland Avenue S. Minneapolis, MN 55404, *pro se* Plaintiff.

Jessica M. Marsh, Esq., and Lee A. Lastovich, Esq., Jackson Lewis P.C., counsel for Defendants.

BECKY THORSON, United States Magistrate Judge.

## INTRODUCTION

Plaintiff Monty Jones filed a Complaint against Defendants Rust Consulting and Debra Thames alleging employment discrimination, retaliation, sexual harassment, and defamation. (Doc. No. 1.) This matter is now before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. No. 14.) Defendants seek dismissal of Plaintiff's employment discrimination claims pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), based on Plaintiff's failure to exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). Defendants also argue that this Court should dismiss the remaining defamation claims. This matter has been referred to this

Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C) and D. Minn. LR 72.1(b). (Doc.

No. 16.) For the reasons stated below, this Court recommends that Defendants' Motion to

Dismiss Plaintiff's Complaint be granted, and that Plaintiff's Complaint be dismissed

without prejudice.

## BACKGROUND[1]

Plaintiff began working for Defendant Rust Consulting on August 23, 2017. (Doc.

No. 1 at ¶ 10.1.) Plaintiff alleges that Defendant Rust Consulting and its management

routinely discriminated against him and other black men by not considering them for hire

or promotion and by treating other employees with more leniency despite them being as

or more qualified than their non-black, non-male counterparts. (*See* Doc. No. 1 at

¶¶ 10.4–5, 10.10, 10.12–13, 10.16, 10.20.) In January 2018, Plaintiff began work on a

project led by four Team Leaders, none of whom were black men. (Doc. No. 1 at ¶ 10.4.)

In April 2018, Plaintiff was hired as a Customer Service Representative ("CSR"), and in

September was promoted to Temporary Team Leader. (Doc. No. 1 at ¶ 10.4, 10.11.)

In May 2018, Plaintiff was chosen to assist in training new employees. (Doc.

No. 1 at ¶ 10.6.) Included in that group was Defendant Debra Thames. *Id.* The two

developed a casual relationship over the following three weeks, instant messaging and

meeting outside of work a few times. (Doc. No. 1 at ¶ 10.7.) However, Plaintiff soon

thereafter informed Defendant Thames that he "wanted only a professional relationship."

---

[1]    For the purposes of this Report and Recommendation, this Court does not decide
the truth of any alleged facts; rather, it assumes the facts in the Complaint to be true and
must construe all reasonable inferences from those facts in the light most favorable to
Plaintiff. *King v. Dingle*, 702 F. Supp. 2d 1049, 1063 (D. Minn. 2010).

(Doc. No. 1 at ¶ 10.13.) Plaintiff alleges that Defendant Thames later made "false accusations" about him, stared at him, followed him around the workplace, and told others that he was a "sexual predator." (Doc. No. 1 at ¶¶ 10.13–14.) Additionally, Plaintiff alleges that Ms. Roberts, a coworker, harassed him by monitoring his interactions with female CSRs and defamed him by encouraging others to do the same based on a belief that he is a sexual predator. (Doc. No. 1 at ¶¶ 10.14, 10.19.)

Plaintiff filed a form *pro se* Complaint on January 7, 2019, asserting Title VII discrimination claims against Rust Consulting and Ms. Thames based on race and gender. (*See* Doc. No. 1.) He also asserted a claim for "Defamation of Character." (*Id.*) In his Complaint, Plaintiff indicated that he had an "upcoming appointment with the EEOC, on January 15, 2019 at 2pm" which he "planned on going to . . . but due to the urgency of this matter, [he] decided to proceed with the lawsuit."[2] (Doc. No. 1. at ¶ 10.6.) Plaintiff conceded that he had not filed any charge of discrimination against the defendants with the EEOC. (*See* Doc. No. 1 at ¶ 6; Doc. No. 21.) In his Complaint, Plaintiff asked "the court to waive any administrative procedures, primarily the 'Notice of Right-to-Sue Letter.'" (Doc. No. 1.) The check boxes indicating whether Plaintiff had received a Notice of Right-to-Sue Letter were left blank. (*Id.* at ¶ 7.) In his papers later filed with the

---

[2]     The EEOC was closed due to the federal government shutdown, and it sent Plaintiff an email on January 11, 2019 canceling his appointment. (Doc. No. 21; Doc. No. 22 at Exhibit F.) At the hearing on Defendants' Motion to Dismiss, Plaintiff stated that he has a new appointment scheduled for September 9, 2019, and that he plans to attend. Plaintiff has not provided documentation confirming the September 9 appointment.

(Footnote Continued on Next Page)

Court, Plaintiff concedes that he decided to proceed with this lawsuit despite not having met with the EEOC or receiving a right-to-sue letter. (Doc. No. 21.)

Defendants filed this Motion to Dismiss on April 25, 2019.[3] Plaintiff opposes the Motion. (Doc. No. 21.) A hearing was held on the matter on August 12, 2019. (Doc. No. 27.)

## DISCUSSION

### A.    Standard of Review

When analyzing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a court generally must limit its inquiry to the pleadings, though "it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor; however, it need not accept "mere conclusory statements," including legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014); *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454

---

[3]    At the hearing on this motion, Plaintiff's comments implied that a meaningful and timely meet-and-confer had not taken place prior to Defendants filing their motion. Defendants filed a meet-and-confer statement that says the parties conferred "by exchanging voicemails and emails" on April 24, 2019. (Doc. No. 15.) Although it does not change the ultimate recommendation from this Court regarding Defendants' Motion to Dismiss, this Court notes that a proper meet-and-confer requires more than such exchanges on the eve of a motion filing. An in-person or telephone discussion is preferred.

(8th Cir. 2010).

To withstand dismissal under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[P]ro se litigants are held to a lesser pleading standard" and their pleadings are to be "liberally construed." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

> **B.    Plaintiff Failed to Exhaust Administrative Remedies Required for Title VII Claims.**

Defendants argue that Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies with the EEOC. "Title VII . . . require[s] that an employee complaining of discrimination follow administrative procedures before filing a lawsuit in federal court." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018). "To exhaust administrative remedies, an individual must: (1) timely file a charge of discrimination with the EEOC . . . and (2) receive notice of the right to sue." *Rush v. State Arkansas DWS*, 876 F.3d 1123, 1125 (8th Cir. 2017) (citing 42 U.S.C. § 2000e–5(b), (c), (e)). "Title VII's charge-filing requirement is a [mandatory] processing rule . . . not a jurisdictional prescription delineating the adjudicatory authority

5

of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). The charge-filing requirement is "mandatory" in that courts must enforce it if a party timely raises the issue. *Id.* at 1849.

Here, Defendants have timely raised the issue. There is no question that Plaintiff failed to exhaust administrative remedies prior to filing this lawsuit. In fact, Plaintiff admits that he filed his Complaint on January 7, 2019, before the date of his originally scheduled meeting with the EEOC on January 15, 2019. Plaintiff's January 15 appointment was then canceled by the EEOC due to the federal government shutdown. (Doc. No. 21; Doc. No. 22 at Exhibit F.) And Plaintiff conceded that, as of the date of the motion hearing, he had yet to meet with the EEOC and had not obtained a right-to-sue letter. (*See* Doc. No. 1; Doc. No. 21.) Significantly, Plaintiff candidly admitted that prior to filing his lawsuit, he was aware of the requirement to exhaust administrative remedies due to previously filed litigation where his action against the YWCA was dismissed for failure to obtain a right-to-sue letter from the EEOC. *See Jones v. YWCA*, No. 14-CV-2076 (JNE/FLN), Doc. No. 6 (D. Minn. Sept. 23, 2014).

In this case, Plaintiff asks the Court to waive the exhaustion requirement because "to go through the whole EEOC process is a waste of time" that will only "delay the inevitable." (Doc. Nos. 21, 23.) Plaintiff asserts that his efforts to file with the EEOC were thwarted by the government shutdown in January 2019, which caused the cancelation of his January 15 appointment. (*See generally* Doc. No. 21.) The government shutdown after the filing of Plaintiff's lawsuit does not, however, excuse Plaintiff from the requirement to exhaust administrative remedies before commencing this litigation.

Further, there is no support for Plaintiff's assertion that the "urgency of the matter" would excuse the exhaustion requirement.

"[F]iling a timely charge of discrimination with the EEOC . . . is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). But "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts" based on "sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). "[I]t is important to remember that such relief is an exception to the rule, and should therefore be used only in exceptional circumstances." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995). Applying the doctrine of waiver to save Plaintiff from exhausting administrative remedies when he, knowing of the exhaustion requirement, filed this lawsuit before even beginning the EEOC process "would be inconsistent with the exceptional nature of equitable modification." *Id.* at 1331. Here, equitable considerations do not excuse Plaintiff for having filed this lawsuit before he sought remedies through the EEOC. *See Boge v. Ringland-Johnson-Crowley Co.*, 976 F.2d 448, 452 (8th Cir. 1992) (stating that "equitable considerations do not excuse his failure to file a new charge [with the state's EEOC counterpart]").[4]

---

[4]     It is unclear if Plaintiff is attempting to bring Title VII claims against both Defendants. Clarification is unnecessary, however, because a plaintiff may only bring a Title VII claim against an "employer," not a co-worker. 42 U.S.C. § 2000e-2(a). In addition, because this Court recommends dismissal of Plaintiff's Title VII claims based on failure to exhaust, the Court need not address Defendants' other arguments for dismissal of those claims.

**C.      This Court Should Decline to Exercise Its Supplemental Jurisdiction Over Plaintiff's Defamation Claims.**

A district court has supplemental jurisdiction over claims that comprise the same case or controversy as those over which it has original jurisdiction. 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction if it dismisses all claims over which it has subject-matter jurisdiction. 28 U.S.C. § 1367(c)(3) (stating that, with some exceptions, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction"). For the reasons stated above, this Court recommends dismissal of Plaintiff's Title VII claims, which would strip it of original jurisdiction. Under the Court's discretion, this Court also recommends declining to exercise supplemental jurisdiction over the remaining defamation claims. Therefore, this Court recommends that the remaining defamation claims be dismissed without prejudice, which will allow Plaintiff—if he chooses—to file a defamation claim with the appropriate state court.[5]

**RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. 12) be **GRANTED**;

2.      Plaintiff's Complaint (Doc. No. 1) be **DISMISSED** without prejudice; and

---

[5]      This does not mean, however, that this Court has made any ruling about the merits of Plaintiff's defamation claim.

3.      That judgment be entered accordingly.

Date: August 19, 2019                              *s/ Becky R. Thorson*
                                                   BECKY R. THORSON
                                                   United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.